**AFFIDAVIT OF FBI SPECIAL AGENT THOMAS M. DALTON
IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Thomas M. Dalton, being duly sworn, depose and state:

**I.   INTRODUCTION**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since 1997. I am currently assigned to the FBI's Boston Field Office's Domestic Terrorism Squad. Among other things, I am responsible for conducting national security investigations and investigations into violations of federal criminal laws, including violent crimes and threats. Prior to being employed as an FBI Agent, I served as a military officer in the U.S. Army for approximately 11 years.

2. As an FBI Special Agent, I am responsible for conducting criminal and national security investigations involving violations of Title 18 of the United States Code and other federal statutes. I am empowered by law to conduct investigations and to make arrests. During my employment with the FBI, I have submitted affidavits in conjunction with applications for numerous criminal complaints and search warrants. I have participated in the execution of numerous federal search and arrest warrants in such investigations. I have been involved in interviewing victims, witnesses, and confidential informants throughout my career. I have received specialized training in the identification and investigation of organized criminal groups and terrorist organizations. I have attended schools and training seminars dealing with weapons of mass destruction, terrorism investigations, narcotic investigations, and physical surveillance. As a result of my training and experience, I am familiar with the tactics, methods and techniques of terrorist networks and their members, including the use of computers, cell phones, social media, email, and the internet in connection with criminal activity.

3. Along with other agents, I have been investigating **ROBERT DARRELL CHAIN** **("CHAIN")**, born on XX XX, 1950, and residing at 17512 Califa Street, Encino, California [hereinafter "the Califa residence"]. I have personally participated in this investigation.

4. I am submitting this affidavit in support of a criminal complaint charging **CHAIN** with transmitting in interstate commerce any communication containing a threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c). As described below, I have probable cause to believe, and do in fact believe, that beginning on or about August 10, 2018, and continuing until on or about August 22, 2018, **CHAIN** did knowingly transmit in interstate commerce using telephone wires, communications containing threats to injure the person of another, to wit: employees of the *Boston Globe* located in Massachusetts, and did so intending that his telephone statements communicate threats and knowing that they would be interpreted as threats, in violation 18 U.S.C. § 875(c).

5. The information set forth in this affidavit results from, among other sources, interviews of witnesses, physical surveillance, and reviews of records and publicly-filed documents. The affidavit is based on my personal observations during the course of this investigation and on information conveyed to me by other government and law enforcement officials. Because this affidavit is submitted for the purpose of seeking issuance of a criminal complaint and arrest warrant, it does not include every fact known to me concerning the investigation. Instead, I only have included those facts that I believe are needed to establish the requisite probable cause to support the criminal complaint.

II.     **RELEVANT LEGAL AUTHORITY**

6. Section 875(c) of Title 18 of the United States Code makes it illegal to transmit in interstate or foreign commerce any communication containing any threat to kidnap any person or

any threat to injure the person of another.

### III.     FACTS SUPPORTING PROBABLE CAUSE

Through knowledge gathered during this investigation, I know the following:

**A.     Threatening Calls to the *Boston Globe***

7. On or about August 10, 2018, the *Boston Globe* announced that it was requesting that other newspaper publications around the country publish a coordinated editorial response to political attacks on the media. The coordinated editorial response was to be published on Thursday, August 16, 2018.

8. Immediately following the announcement, the *Boston Globe*'s newsroom began receiving threatening calls from an unidentified male caller, later identified by law enforcement through subscriber telephone records as **CHAIN**. In the calls, **CHAIN** threatened to travel to the *Globe*'s offices and kill newspaper employees. Several of the threatening phone calls were recorded. Based on the voice on the recordings and the language used, I believe that the same male individual made all of the recorded calls. Based on call records and interviews with the *Boston Globe*'s newsroom employees, the calls were made between approximately August 10, 2018 and August 22, 2018.

9. For example, in one recorded call to the *Boston Globe* newsroom, made on or about August 13, 2018, **CHAIN** stated, "Hey, how's your pussy smell today, nice and fresh? We are going to shoot you motherfuckers in the head, you Boston Globe cocksuckers. Shoot every fucking one of you."

10. In another recorded call, made on or about August 16, 2018, the date that the coordinated editorial was published, **CHAIN** stated:

> You're the enemy of the people, and we're going to kill every fucking one of you. Hey, why don't you call the F, why don't you call Mueller, maybe he can help you out buddy. Still there faggot? Alright, why, you going to trace my call? What are you going to do motherfucker? You ain't going to do shit. I'm going to shoot you in the fucking head later today, at 4 o'clock. Goodbye.

11. As a result of these threatening calls, *Boston Globe* employees reported feeling threatened and scared. The *Boston Globe* reported the calls to law enforcement and contracted with a private security firm to protect its employees. In response to the August 16, 2018 call in which **CHAIN** threatened to shoot *Boston Globe* employees at 4 p.m. that day, marked law enforcement units from the Boston Police Department came to the *Globe*'s office and patrolled the building to ensure the safety of the occupants.

  **B.**  **Telephone Records Identify CHAIN as the Threatening Caller**

12. There were approximately 12 threatening calls made to the *Boston Globe* between August 10 and 17, 2018. Each of the threatening calls was listed on the *Globe*'s caller identification logs as "blocked." Records obtained from Verizon Communications, Inc., the telecommunications service provider for the *Boston Globe*, identified the originating phone number for the threatening phone calls as a phone number ending in 8760 (the "8760 telephone number").

13. Records obtained from Charter Communications, Inc. revealed the 8760 telephone phone number to be a landline telephone number registered to **CHAIN** at the Califa residence. According to the Charter Communications records, **CHAIN**'s landline account has been active since November 14, 2000. Toll records for the 8760 telephone number showed that calls were made from that phone to the *Boston Globe* main telephone number on the same dates and times as the threatening calls made by the blocked number.

14. Records obtained from the California Department of Motor Vehicles confirmed that

**CHAIN** resides at the Califa residence. A navy blue 2018 Volkswagen sport utility vehicle, with license plate number 8BHF177, parked in the driveway at the Califa residence, is registered to **CHAIN**.

15. On or about August 22, 2018, the *Boston Globe* received two additional threatening calls. Unlike the previous threatening calls made between August 10-17, 2018, these two calls were not listed as "blocked" on the *Globe*'s caller identification logs. Instead, the newspaper's caller identification listed the incoming phone number as a number ending in 6529 (the "6529 telephone number").

16. During one of the phone calls on or about August 22, 2018, a *Boston Globe* employee asked the male caller, later identified as **CHAIN**, why he was calling. The caller stated:

> Because you are the enemy of the people, and I want you to go fuck yourself. As long as you keep attacking the President, the duly elected President of the United States, in the continuation of your treasonous and seditious acts, I will continue to threats, harass, and annoy the Boston Globe, owned by the New York Times, the other fake news.

17. Although the threatening caller was male, records obtained from Verizon Wireless listed the 6529 telephone number as a cellular phone number whose subscriber was identified as Betty Chain, residing at the Califa residence. Toll records from Verizon Wireless for the 6529 telephone number confirmed two calls placed to the main number of the *Boston Globe* on August 22, 2018. Through the course of this investigation, I have learned that Betty Chain is **CHAIN**'s wife and resides with him at the Califa residence.

18. A firearms records check revealed that **CHAIN** owns several firearms, and purchased a new 9mm carbine rifle in May 2018.

## IV. CONCLUSION

20. Based on the foregoing facts, and on my experience, training, and discussions with other individuals involved in this investigation, I believe that probable cause exists to conclude that **ROBERT DARRELL CHAIN** transmitted in interstate commerce any communication containing any threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c). Therefore, I request that a criminal complaint be issued charging **ROBERT DARRELL CHAIN** accordingly, and that an arrest warrant be issued.

_____
THOMAS M. DALTON
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me on this  29  day of August, 2018.

_____
DONALD L. CABELL
United States Magistrate Judge